**DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. CROIX**

| | | |
|---|---|---|
| **ANDERSON B. POLEON and** | : | **CIVIL ACTION** |
| **BEATRICE POLEON** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **GOVERNMENT OF THE VIRGIN ISLANDS,** | : | **NO. 2013-024** |
| **CHRISTOPHER HOWELL, STEPHEN** | : | |
| **BROWN, ARTHUR JOSEPH, FRANKIE** | : | |
| **ORTIZ, MELISSA P. ORTIZ and** | : | |
| **WARREN T. SEDAR** | : | |

**<u>MEMORANDUM OPINION</u>**

**Savage, J.**                                                                     **August 8, 2018**

Anderson Poleon, a Virgin Islands police officer, brings this § 1983 civil rights action against the Government of the Virgin Islands (GVI), two Assistant Attorneys General, and four members of the Virgin Islands Police Department (VIPD), claiming they conspired to unlawfully arrest, imprison, and prosecute him. He contends that, acting in concert, they violated his constitutional rights in retaliation for his speaking out against VIPD's policy of "sharing arrests," which entailed officers falsely attesting that they had witnessed facts to establish probable cause for an arrest. He also claims that the defendants conspired to falsely blame him for the dismissal of a criminal case for spoliation of evidence. He asserts territorial claims against the individual defendants for defamation, abuse of process, false arrest, false imprisonment, loss of consortium, and intentional infliction of emotional distress.

His voluminous ten-count complaint includes two counts under 42 U.S.C. § 1983, one against the GVI and the other against the individual defendants. The § 1983 claim against the GVI alleges that the VIPD policy of sharing arrests violated the Fourth

Amendment rights of Virgin Islands citizens. Poleon also asserts that the GVI acquiesced in his being targeted and demoted in violation of his First Amendment right to speak out against the unlawful practice of arrest sharing.[1] The remaining counts against the GVI are territorial claims for negligent hiring, loss of consortium, and intentional infliction of emotional distress.

Moving to dismiss the complaint, the GVI argues that Poleon lacks standing to bring a Fourth Amendment claim on behalf of the residents of the Virgin Islands, and that his speech was not protected under the First Amendment.[2] The GVI also asserts that because Poleon failed to comply with the notice requirements of the Virgin Islands Tort Claims Act (VITCA), his claims of negligent hiring, loss of consortium, and intentional infliction of emotional distress are barred.[3]

We hold that Poleon lacks standing to bring his civil rights claim against the GVI for violating the Fourth Amendment rights of Virgin Islands citizens. Because he failed to comply with the VITCA's notice requirements, the territorial claims against the GVI must be dismissed. Thus, all claims against the GVI will be dismissed.

The other § 1983 claim is against the individual defendants, Assistant Attorney General Warren Sedar, Assistant Attorney General Melissa Ortiz, St. Croix Police Chief Christopher Howell, Officer Arthur Joseph, Officer Stephen Brown, and Officer Frankie Ortiz, for conspiring to unlawfully seize, arrest, imprison, and prosecute Poleon in violation of the First, Fourth, and Fourteenth Amendments.[4] Poleon also asserts

---

[1] Compl. (Doc. No. 1) ¶¶ 211–16.

[2] GVI Mot. to Dismiss (Doc. No. 28) at 8–9.

[3] *Id.* at 12.

[4] Compl. ¶¶ 201–10. Brown is now retired. *Id.* ¶ 11.

territorial claims of defamation, false arrest, false imprisonment, abuse of process, loss of consortium, and intentional infliction of emotional distress against various individual defendants.[5]

In their motions to dismiss, AAGs Ortiz and Sedar argue that the plaintiffs failed to state a violation of the United States Constitution or federal law to support a federal cause of action.[6] They also invoke absolute and qualified immunity, claiming they were acting within the scope of their authority as prosecutors.[7] They maintain that even if they are not immune, they cannot be held liable for the § 1983 claim because they did not personally participate in the unconstitutional conduct.[8] They further contend that Poleon fails to plead sufficient facts to support the claims because they did not personally arrest or detain him.[9]

We conclude that AAGs Sedar and Ortiz enjoy absolute immunity. It is not necessary to decide their other arguments. Thus, we shall grant their motions to dismiss.

After filing his answer, Joseph filed a motion for judgment on the pleadings pursuant to Rule 12(c), arguing that Poleon has not pleaded sufficient facts.[10] Brown

---

[5] The malicious prosecution claim against AAGs Sedar and Ortiz was voluntarily dismissed. Notice of Voluntary Dismissal (Doc. No. 44).

[6] Ortiz Mot. to Dismiss (Doc. No. 26) at 8; Sedar Mot. to Dismiss (Doc. No. 40) at 9.

[7] Ortiz Mot. to Dismiss at 13–17; Sedar Mot. to Dismiss at 14–17.

[8] Ortiz Mot. to Dismiss at 6–8; Sedar Mot. to Dismiss at 6–9.

[9] Ortiz Mot. to Dismiss at 9–12, 17; Sedar Mot. to Dismiss at 9–13, 17–20.

[10] *See* Joseph Answer (Doc. No. 24); Joseph Mot. for J. on the Pleadings (Doc. No. 54) at 5–8.

filed neither an answer nor a Rule 12 motion.[11]  Nevertheless, we shall consider whether the rulings regarding other defendants should be applied to Brown.  If the court grants another defendant's motion to dismiss, the court may, on its own initiative, dismiss claims as to non-moving defendants if the claims against the non-moving defendants suffer from the same defects raised in the moving parties' motions. *Minnesota Lawyers Mut. Ins. Co. v. Ahrens*, 432 F. App'x 143, 148 (3d Cir. 2011) (quoting *Bryson v. Brand Insulations, Inc.*, 621 F.2d 556, 559 (3d Cir. 1980) (stating that the court may *sua sponte* dismiss a claim as to non-moving defendants where the inadequacy of the claim is clear)); *see also McPherson v. United States*, 392 F. App'x 938, 942–43 (3d Cir. 2010) (stating that *sua sponte* dismissal is appropriate when affirmative defense is clear from the face of the complaint).  A claim against a non-moving party may be dismissed if the claims against all defendants are "integrally related" or where the non-moving defendants are in a similar position to the moving defendants.  *Bonny v. Soc'y of Lloyd's*, 3 F.3d 156, 162 (7th Cir. 1993).  Therefore, to the extent the deficiencies cited in other defendants' motions to dismiss also apply to Brown, we shall review them.

Poleon has sufficiently alleged that Joseph and Brown conspired to violate his Fourth Amendment rights by falsely arresting and imprisoning him.  He has also stated territorial claims for false arrest and false imprisonment against Brown.  Because it appears Poleon may be able to cure the deficiencies we have identified as to the defamation claim against Joseph, we shall give Poleon leave to amend the complaint. The claim for intentional infliction of emotional distress survives against Joseph and

---

[11] Unlike Brown who filed nothing, Howell and Frankie Ortiz filed answers to the complaint. Frankie Ortiz Answer (Doc. No. 29); Howell Answer (Doc. No. 34).  They did not move to dismiss.

Brown because if proven, their conduct—as it affects Poleon, not his wife—could reasonably be regarded as extreme and outrageous.

## Background

According to the complaint, Anderson Poleon's ordeal began when he refused to go along with the VIPD's "arrest sharing" scheme and then complained about it.[12]  On March 16, 2012, Poleon and Roberts, a fellow officer, questioned two individuals about their suspicious activity.[13]  Roberts handcuffed and transported one of the individuals to the police station.[14]  Upon his return to the station, an unnamed officer asked Poleon to claim that he had arrested the man and to draft a probable cause affidavit containing facts he had not witnessed. After declining to prepare the affidavit, Poleon filed an internal complaint with the Special Operations Bureau.[15]

The unnamed officer's request was part of an arrest sharing scheme.  The directive to engage in arrest sharing came from Howell, Poleon's supervising officer.[16]  Poleon claims that after he filed the internal complaint, Howell continually harassed him and was "out to get him."[17]  The day after he complained of arrest sharing, he was demoted from master K-9 trainer to the bike patrol unit.[18]  He then filed an internal

---

[12] Compl. ¶¶ 1–7, 27–42.  It is not clear whether Poleon is currently employed by the VIPD.  *Id.* ¶ 19.  He was told that he must submit to a drug test before returning to work in January 2013.  No further information is provided.  *Id.* ¶ 189.

[13] *Id.* ¶¶ 29–30.

[14] *Id.* ¶ 32.

[15] *Id.* ¶ 42.

[16] *Id.* ¶¶ 33–37.

[17] *Id.* ¶¶ 55–66.

[18] *Id.* ¶¶ 43–47. The pleadings do not include the dates on which Poleon submitted the complaint to Internal Affairs or learned of his demotion.

complaint against Howell with the VIPD Internal Affairs Unit.[19]  Howell then demoted him to foot patrol and took away any duty vehicles assigned to him.[20]  Several months later on July 11, 2012, Poleon was arrested for unlawfully disposing of evidence in a pending criminal prosecution, specifically a wrecked vehicle impounded at the VIPD.

In 2010, two years before his arrest, Poleon had expressed interest in purchasing a vehicle that had been seized and impounded at the VIPD.[21]  The vehicle was evidence in the negligent vehicular homicide case against Kenneth Milligan.  Joseph, the lead investigator in the *Milligan* case, informed Poleon that the vehicle could not be purchased until the prosecutor in the case, AAG Ortiz, authorized its release.[22]  Poleon obtained a letter, dated July 21, 2010, from AAG Ortiz addressed to both the VIPD and Joseph authorizing the release of the vehicle.[23]  Poleon then purchased the vehicle from Milligan's insurance company and resold it to fellow officer Roberts, who later removed it from the impound lot.[24]

Almost two years later, on June 4, 2012, defense counsel in the *Milligan* case filed a motion to dismiss for spoliation of evidence.[25]  At some point after the motion was

---

[19] *Id.* ¶ 48.

[20] *Id.* ¶¶ 53–56.

[21] *Id.* ¶¶ 67, 68, 83.

[22] *Id.* ¶¶ 69, 72, 77.  Poleon claims that Joseph told him the vehicle was no longer needed once Joseph gathered the information from it.  Poleon contends he observed Joseph gathering information from the vehicle before he requested and received the release letter from AAG Ortiz.  *Id.* ¶¶ 74, 78.

[23] *Id.* ¶ 80; Compl. Ex. 4, Letter from AAG Ortiz, June 21, 2010 (Doc. No. 1-4).

[24] Compl. ¶¶ 83–84, 103. The pleadings do not include the dates on which Poleon purchased the vehicle or sold it to Roberts.

[25] *Id.* ¶ 89.

filed, AAG Sedar appeared as the lead prosecutor.[26]  At a hearing on the motion, Joseph denied knowing how the vehicle had been removed from the impound lot and did not mention the release letter.[27]  Poleon contends that AAG Ortiz, AAG Sedar and Joseph blamed him for the vehicle's premature release and unauthorized removal to cover up their spoliation of the evidence.[28]

On June 15, 2012, Brown called him to set up a meeting to discuss how he had obtained the *Milligan* vehicle.[29]  Poleon informed Brown that either AAG Ortiz or her colleague, AAG Evans, provided him a release letter.[30]  After the meeting, Poleon called both Ortiz and Evans to request a copy of the release letter.  Neither prosecutor returned his calls.[31]

On July 11, 2012, Poleon was summoned to a meeting with AAG Sedar, Howell, and other officers.[32]  Before going to the meeting, Poleon called AAG Ortiz to again request a copy of the release letter.  She told him she could not discuss the letter, but he should attend the meeting.[33]

---

[26] *Id.* ¶ 90–91.

[27] *Id.* ¶ 93.  The pleadings do not discuss the court's ruling on the motion.

[28] *Id.* ¶¶ 97, 112.

[29] *Id.* ¶¶ 99–100.

[30] *Id.* ¶¶ 101–02.

[31] *Id.* ¶¶ 107–08.

[32] *Id.* ¶¶ 113, 120.

[33] *Id.* ¶¶ 116–18.

At the meeting, AAG Sedar accused him of removing the vehicle from the lot because he was "politically connected" with the defendant in the *Milligan* case.[34] Poleon was then presented with a warrant for his arrest. He was handcuffed and taken into custody.[35]

After spending the night in jail in his underwear and under suicide watch, Poleon was charged with extortion, embezzlement, destruction of evidence, and interfering with property in custody of an officer.[36] The probable cause affidavit prepared by Brown did not mention the release letter. Although it correctly stated that AAG Evans had not given Poleon a release letter in the *Milligan* case, the affidavit did not recite that AAG Ortiz had given him a letter authorizing the release of the vehicle.[37]

While her husband was in custody, Beatrice Poleon was pulled over by Joseph, who did not exit his police cruiser. He drove away after she exited her car to ask why she had been stopped.[38] When she arrived home, she observed Frankie Ortiz and other officers searching the outside property and recording vehicular information.[39]

Poleon asserts that the individual defendants conspired to fabricate statements in the affidavit to create the probable cause necessary to arrest him.[40] The affidavit, drafted by Brown, stated that Joseph had "instructed Officer Poleon to leave the

---

[34] *Id.* ¶ 124.

[35] *Id.* ¶¶ 126–33.

[36] *Id.* ¶¶ 158–60.

[37] *Id.* ¶¶ 161–62.

[38] *Id.* ¶¶ 150–52.

[39] *Id.* ¶ 153.

[40] *Id.* ¶ 209.

[*Milligan*] vehicle alone as it was evidence in a trial." [41]   It appears that this representation was based on Joseph's testimony in the *Milligan* case.  At the *Milligan* hearing, Joseph had falsely "denied having any knowledge as to how the vehicle was removed and misrepresented to the Court that the vehicle was removed without his authorization."[42]  Frankie Ortiz took statements from other officers which Brown relied upon in preparing the affidavit.[43]

AAG Sedar represented the Government during the hearing to procure Poleon's arrest warrant.  At Poleon's initial appearance, Sedar requested bond be posted for his release.[44]

On the same day Poleon was charged, the release letter from AAG Ortiz "surfaced."[45]  The following day, after Poleon had spent the night in jail, AAG Sedar produced the release letter.  The criminal charges against Poleon were dismissed without prejudice.[46]

Poleon was placed on administrative leave with pay on the day of his arrest.[47] On August 31, 2012, despite unequivocal evidence that he had been authorized to remove the vehicle, the VIPD advised him that it was taking disciplinary action against

---

[41] *Id.* ¶ 165.

[42] *Id.* ¶ 93.

[43] *Id.* ¶ 112.

[44] *Id.* ¶ 170.

[45] *Id.* ¶¶ 171, 174.

[46] *Id.* ¶¶ 170–71, 174–76.

[47] *Id.* ¶ 135.

him for the unauthorized removal of the *Milligan* vehicle.[48]  Not until January 31, 2013, did the VIPD advise Poleon that he could return to work provided he submitted to a drug test.[49]

## Standard of Review

Pursuant to Rule12(b)(6), a court may dismiss all or part of an action for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  The complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).  The plaintiff must allege facts that indicate "more than a sheer possibility that a defendant has acted unlawfully."  *Id*.  Pleading only "facts that are 'merely consistent with' a defendant's liability" is insufficient and cannot survive a motion to dismiss.  *Id.* (quoting *Twombly*, 550 U.S. at 557).

A conclusory recitation of the elements of a cause of action is not sufficient.  The plaintiff must allege facts necessary to make out each element.  In other words, the complaint must contain facts which, if proven later, support a conclusion that the cause of action can be established.

In assessing the sufficiency of a complaint, a court must: (1) identify the elements of the causes of action; (2) disregard conclusory statements, leaving only factual allegations; and (3) assuming the truth of those factual allegations, determine whether they plausibly give rise to an entitlement to relief.  *Palakovic v. Wetzel*, 854 F.3d 209,

---

[48] *Id.* ¶¶ 185–186.

[49] *Id.* ¶¶ 188–89.

220 (3d Cir. 2017) (internal quotation marks and citations omitted) (quoting *Burch v. Millberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011)).

A motion to dismiss brought pursuant to Rule 12(b)(1) is treated similarly to a Rule 12(b)(6) motion. *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000). Whether a Rule 12(b)(1) motion presents a "facial" or a "factual" attack dictates the scope of review. *Lincoln Benefit Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015). A facial challenge asserts an insufficiency on the face of the complaint. *Id.* A factual attack disputes the factual basis supporting subject matter jurisdiction. *Id.*

The GVI makes a facial challenge to subject matter jurisdiction. It argues that Poleon lacks standing to bring a civil rights claim on behalf of the citizens of the Virgin Islands.

In reviewing a facial challenge, we consider only the allegations in the complaint and the attached documents. *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014) (citation omitted). We accept the allegations as true and construe them in the light most favorable to the plaintiff to determine if the plaintiff has sufficiently alleged a basis for subject matter jurisdiction. *See Gould Elecs., Inc.*, 220 F.3d at 176 (citations omitted); *see also Atkinson v. Pa. Shipbuilding Co.*, 473 F.3d 506, 514 (3d Cir. 2007). Thus, in considering this facial challenge under Rule 12(b)(1), we apply the same standard of review used in considering a motion to dismiss under Rule 12(b)(6).

Joseph moves for judgment on the pleadings under Rule 12(c). In deciding a motion for judgment on the pleadings, we consider the facts alleged in the pleadings and documents attached as exhibits or incorporated by reference in the pleadings. *See* Fed. R. Civ. P. 10(c); *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327,

335 (6th Cir. 2007); *cf. Steinhardt Grp. Inc. v. Citicorp*, 126 F.3d 144, 145 & n.1 (3d Cir. 1997) (in Rule 12(b)(6) context).  All the well-pleaded factual assertions in the non-movant's pleadings are accepted as true and all contrary allegations in the movant's pleadings are disregarded.  5C Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 1368 (3d ed., Apr. 2016) (citing *Allah v. Al-Hafeez*, 226 F.3d 247, 249–50 (3d Cir. 2000)).  Here, we consider Poleon's complaint and Joseph's answer.

To succeed on a motion for judgment on the pleadings, the movant must establish that there is no material issue of fact and that he is entitled to judgment as a matter of law.  *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 290–91 (3d Cir. 1988); *Shelly v. Johns-Manville Corp.*, 798 F.2d 93, 97 n.4 (3d Cir. 1986).  If a material issue of fact arises from the pleadings, the motion must be denied.  *Inst. for Sci. Info., Inc. v. Gordon & Breach, Sci. Publishers, Inc.*, 931 F.2d 1002, 1005 n.3 (3d Cir. 1991) (citing *Jablonski*, 863 F.2d at 290–91).  The motion can be granted only if the non-movant cannot prevail under any set of facts.  *Green v. Fund Asset Mgmt., L.P.*, 245 F.3d 214, 220 (3d Cir. 2001); *Turbe v. Gov't of V.I.*, 938 F.2d 427, 428 (3d Cir. 1991).

### Federal Question Jurisdiction

AAG Ortiz moves to dismiss the complaint for failure to present a federal question.[50]  She contends that the alleged facts fail to establish that she violated federal law.[51]

Subject matter jurisdiction does not depend on whether a federal claim raised is factually valid.  *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 511 (2006).  Instead, the

---

[50] Ortiz Mot. to Dismiss at 8.

[51] *Id.*

12

complaint must simply present a federal question. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). Federal question jurisdiction exists where the complaint asserts that the claim "arises under" federal law. *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 9–10 (1983) (citations omitted).

The complaint here alleges that, while acting under color of law, AAG Ortiz, together with the other individual defendants, deprived Poleon of his constitutional rights when they conspired to unlawfully seize, arrest, imprison, and prosecute him in violation of his First, Fourth, and Fourteenth Amendment rights.[52] Clearly, Poleon states a § 1983 cause of action for deprivation of his constitutional rights. Therefore, we have federal question jurisdiction under 28 U.S.C. § 1331.

## Standing

The GVI argues that Poleon lacks standing to bring a Fourth Amendment claim on behalf of the citizens of the Virgin Islands.[53] We agree.

Poleon alleges that the VIPD's practice of sharing arrests violates the Fourth Amendment rights of the citizens of the Virgin Islands. He seeks an order "enjoining the VIPD from 'sharing the arrests' of its officers with other officers and retaliating against officers who challenge the VIPD's unlawful practices."[54] He may be correct that this practice violates the Fourth Amendment. But, he does not have standing to bring the action on behalf of Virgin Islands citizens.

---

[52] Compl. ¶¶ 203–10.

[53] GVI Mot. to Dismiss at 8.

[54] Compl. ¶ 216.

To have Article III standing to bring an action in federal court, the plaintiff must have suffered an injury-in-fact. That means he suffered an invasion of a legally protected interest that is concrete, particularized, and actual or imminent. *See Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 278 (3d Cir. 2014) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).

A plaintiff cannot assert another's legal rights. *Common Cause v. Pa.*, 558 F.3d 249, 258 (3d Cir. 2009) (quoting *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 12 (2004), *abrogated on other grounds by Lexmark Intern., Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1387–88 (2014)). A complaint fails to state a present case or controversy under Article III if the plaintiff raises only a "generally available grievance about government" and seeks "relief that no more directly and tangibly benefits him than it does the public at large." *Common Cause*, 558 F.3d at 259 (quoting *Lujan*, 504 U.S. at 573–74).

Poleon does not assert that the practice of sharing arrests violated his Fourth Amendment rights. Nor does he allege that he sustained or may sustain a direct injury as a result of that practice. Instead, he sets forth a generalized claim that the GVI, through the VIPD, violated the constitutional rights of the residents of the Virgin Islands. Thus, Poleon does not have standing to bring a § 1983 claim against the GVI for violating the Fourth Amendment rights of citizens of the Virgin Islands.

### § 1983 Claims

Poleon alleges that the individual defendants conspired to unlawfully seize, arrest, and imprison him in violation of his First, Fourth and Fourteenth Amendments "by lying about the existence of the release letter, agreeing to fabricate probable cause for

[his] arrest, and by working together to effect[uate] his unlawful arrest."[55] More specifically, he claims that the individual defendants violated his Fourth Amendment right to be free from illegal seizure, his First Amendment right to be free from retaliation for speaking out regarding arrest sharing, and his Fourteenth Amendment right to due process.

Poleon's allegations, if proven, demonstrate the existence of an agreement among the defendants to violate his Fourth Amendment rights by fabricating probable cause to falsely arrest and imprison him. However, he fails to assert a Fourteenth Amendment due process claim for the deprivation of his liberty interest in his reputation because he was paid during his suspension. He also fails to state a First Amendment claim for retaliation because he spoke out about arrest-sharing as an employee, not as a citizen.

To state a claim for conspiracy under § 1983, Poleon must allege: (1) the existence of an agreement between two or more co-conspirators; (2) the conspirators deprived him of a constitutional or federally protected right; and (3) they acted under color of state law. *Lazaridis v. Wehmer*, 591 F.3d 666, 672 (3d Cir. 2010); *Parkway Garage, Inc. v. City of Philadelphia*, 5 F.3d 685, 700 (3d Cir. 1993), *abrogated on other grounds by U.A. Theatre Circuit, Inc. v. Twp. of Warrington*, 316 F.3d 392 (3d Cir. 2003); *Eddy v. Virgin Islands Water & Power Auth.*, 955 F. Supp. 468, 475 (D.V.I.), *on reconsideration*, 961 F. Supp. 113 (D.V.I. 1997) ("[F]or individual defendants to be held personally liable under section 1983, they must have acted under the color of territorial law."); *see also District of Columbia v. Carter*, 409 U.S. 418, 424–25 (1973) (extension

---

[55] *Id.* ¶ 209.

of § 1983 to guard against deprivation under color of territorial law). To adequately plead conspiracy under § 1983, a plaintiff must present facts from which an agreement may be inferred. *Great Western Mining & Mineral Co. v. Fox Rothschild, LLP*, 615 F.3d 159, 178 (3d Cir. 2010).

The allegations appear to make out two separate conspiracies. One is an agreement among all the defendants to falsely blame Poleon for the dismissal of a criminal case for spoliation of evidence. The other is an agreement to retaliate for Poleon's complaining about arrest sharing. According to the complaint, the defendants acted in concert to retaliate against Poleon for refusing to participate in and complaining about the VIPD's practice of sharing arrests. Despite having different reasons for doing so, the defendants agreed to violate Poleon's constitutional rights.

Finding that Poleon has alleged the existence of a conspiracy does not end the inquiry. He must still sufficiently allege the personal involvement of each of the defendants in the conspiracy and the violation of his constitutional rights.

*Personal Involvement*

To impose liability upon a defendant in a § 1983 action, the plaintiff must show that that defendant had personal involvement in the wrongdoing. *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)). *Respondeat superior* alone does not give rise to § 1983 liability. Allegations based on the defendant's "responsibility for supervising" those involved, without more, are insufficient. *Rode,* 845 F.2d at 1208. Rather, liability must be demonstrated by showing that the defendant personally directed or, with actual knowledge, acquiesced in the conduct. *Chavarriaga*, 806 F.3d at 222 (citing *Rode*, 845

F.2d at 1207).  Allegations of personal involvement must be pled with particularity, providing information on time, place, and persons responsible.  *Rode*, 845 F.2d at 1207–08 (citing *Boykins v. Ambridge Area Sch. Dist.*, 621 F.2d 75, 80 (3d Cir. 1980)).

The allegations implicating Joseph and Brown state a conspiracy claim under § 1983.  Poleon alleges that they conspired to cover up the mistakes of others which resulted in the dismissal of the *Milligan* criminal case for spoliation of evidence and for his complaining about arrest sharing.[56]  Both participated in the joint effort.  Brown prepared the false probable cause affidavit containing Joseph's misrepresentations.  These allegations sufficiently "raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555 (citation omitted).  They are not mere conclusory statements.  Consequently, Poleon sufficiently alleges that Joseph and Brown conspired to violate his civil rights.

Sedar was the prosecutor at Poleon's arraignment and requested bond as a condition for his release.[57]  This conduct goes beyond a merely supervisory role.  He is not sued in his official capacity, but in his individual capacity.  AAG Ortiz, on the other hand, did not have any personal involvement in the decision to arrest or prosecute Poleon.  The only allegations against her are that she failed to return his call when he requested a copy of the release letter, and encouraged him to attend the meeting.  These allegations fall short of personal involvement.

---

[56] The defendants' conduct in the *Milligan* case cannot be used to support Poleon's claims in this case.  Although it may have evidentiary value in proving the defendants' motivation for why they took the action they did against Poleon, there is no cause of action in this case that arises out of that conduct.

[57] *Id.* ¶ 170.

*Fourth Amendment – False Arrest and False Imprisonment*

Poleon contends that the defendants fabricated probable cause for his arrest. Although they knew that AAG Ortiz had authorized the vehicle's removal, they omitted that information from the probable cause affidavit and did not inform the magistrate that he was authorized to remove it. As a result, the magistrate issued a warrant for his arrest, resulting in his being seized and imprisoned.

False arrest and false imprisonment causes of action are intertwined. A false arrest claim is "grounded in the Fourth Amendment's guarantee against unreasonable seizures." *Groman v. Twp. of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995) (citations omitted); *see also Manuel v. City of Joliet*, 137 S. Ct. 911, 917 (2017). To state a claim for false arrest, Poleon must allege that he was arrested without probable cause. *James v. City of Wilkes-Barre*, 700 F.3d 675, 680 (3d Cir. 2012). Because Poleon was arrested pursuant to a warrant, he must allege that the warrant was invalid because it contained false statements that formed the basis for the finding of probable cause. *Andrews v. Scuilli*, 853 F.3d 690, 697 (3d Cir. 2017) (citations omitted).

An arrest lacking probable cause can support a cause of action not only for false arrest, but also for false imprisonment. A § 1983 Fourth Amendment claim for false imprisonment is "based on a detention pursuant to that arrest." *Groman,* 47 F.3d at 636. Where a person is imprisoned after having been arrested without probable cause, the imprisonment is deemed false because it was based upon an illegal arrest. *Id.*

Here, the individual defendants did not make the call on probable cause. That determination was made by a detached judicial authority. AAG Sedar presented the

facts supplied by Joseph and Brown at Howell's direction to the issuing authority who decided there was probable cause to arrest Poleon.

An arrest warrant does not always provide a shield against a false arrest claim. *Andrews*, 853 F.3d at 697–98; *Wilson*, 212 F.3d at 786. Where the warrant was issued on the basis of an affidavit that knowingly and deliberately, or with a reckless disregard for the truth, contained material false statements or omitted material facts necessary to the probable cause determination, it does not justify an arrest. In that case, the arrest is deemed illegal and invalid. *Reedy v. Evanson*, 615 F.3d 197, 213 (3d Cir. 2010) (citing *Wilson*, 212 F.3d at 786–87) (internal quotations omitted); *see also Franks v. Del.*, 438 U.S. 154, 155–56 (1978); *Andrews*, 853 F.3d at 697–701. Hence, one who procures an arrest warrant based on knowingly false or intentionally misleading information cannot escape liability for a false arrest claim.

Even if the misstatements or omissions in the affidavit in this case were not made intentionally, Poleon sufficiently alleges that they were made with reckless disregard for the truth. Omissions are made with reckless disregard if the affiant withholds a fact that "[a]ny reasonable person would have known that this was the kind of thing the judge would wish to know." *Andrews*, 853 F.3d at 698 (quoting *Wilson*, 212 F.3d at 783 (internal citation omitted)). Unlike omissions, assertions are made with reckless disregard for the truth "even if they involve minor details—recklessness is measured not by the relevance of the information, but the demonstration of willingness to affirmatively distort truth." *Wilson*, 212 F.3d at 788. If an officer "doubt[s] the accuracy of the information he reported," then the assertion is made with reckless disregard. *Id.* (quoting *United States v. Clapp*, 46 F.3d 795, 801 n.6 (8th Cir. 1995)). Here, according

to the complaint, both the omissions and the false assertions in the probable cause affidavit were made intentionally, or, at least, in reckless disregard for the truth.

In the affidavit, Brown represented that he interviewed Joseph who informed him that he had told Poleon "to leave the vehicle alone as it was evidence in a trial."[58] According to the affidavit, Poleon claimed that AAG Evans had given him the release letter, and Evans denied giving him one.[59] That Evans did not give Poleon a release letter was literally true. But, Brown did not reveal that Poleon recalled receiving the release letter from either Evans or Ortiz. Brown did not mention that AAG Ortiz had given Poleon the release letter authorizing him to remove the vehicle.[60]

A plaintiff can prevail on a false arrest or false imprisonment claim by showing that the arresting officer ignored reasonably discoverable exculpatory evidence. *See Kingsland v. City of Miami*, 382 F.3d 1220, 1228–29 (11th Cir. 2004) (holding that an officer may not "conduct an investigation in a biased fashion or elect not to obtain easily discoverable facts"); *BeVier v. Hucal*, 806 F.2d 123, 128 (7th Cir. 1986). Poleon sufficiently alleges that Brown ignored reasonably discoverable facts that would have eliminated any basis of probable cause to arrest and imprison Poleon—the existence of the release letter. Brown could have reasonably discovered from Howell, Joseph, AAG Ortiz, or Poleon himself that the vehicle had been released to Poleon.

Brown also represented in the affidavit that the insurance claims adjuster denied that Poleon had provided her with a copy of the release letter. Actually, Brown had

---

[58] Compl. ¶ 165.

[59] *Id.* ¶ 162.

[60] *Id.* ¶¶ 162–63.

never asked her about a release letter.[61]  In short, although Brown knew there was a release letter, he falsely represented or created the impression that it did not exist.

The letter releasing the *Milligan* vehicle to Poleon, which is attached to the complaint, is addressed to Joseph.  It is dated July 21, 2010, on the Attorney General's letterhead, and signed by AAG Ortiz.[62]

The release letter was material to the probable cause determination.  It clearly demonstrated that Poleon had authorization to remove the vehicle from the impoundment lot.  Failing to inform the magistrate of the letter could only have been intentional or in reckless disregard.  Viewed in the light most favorable to Poleon, these allegations state a Fourth Amendment cause of action under § 1983.  *See Franks*, 438 U.S. at 156.

*Fourteenth Amendment – Due Process*

Poleon asserts a Fourteenth Amendment due process claim for the deprivation of his liberty interest in his reputation.  When a person's "name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential."  *Pasour v. Phila. Housing Auth.*, 67 F. Supp. 3d 683, 693 (E.D. Pa. 2014) (quoting *Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971)).  To state a due process claim, a plaintiff must aver "a stigma to his reputation *plus* deprivation of some additional right or interest."  *Dee v. Borough of Dunmore*, 549 F.3d 225, 233–34 (3d Cir. 2008) (emphasis in original) (quoting *Hill v. Borough of Kutztown*, 455 F.3d 225, 236 (3d Cir. 2006)); *Pasour*, 67 F. Supp. 3d at 693 (same).

---

[61] Compl. ¶¶ 167–68.

[62] *Id.* Ex. 4, Letter from AAG Ortiz, June 21, 2010.

The plaintiff must allege that the stigmatizing statements were accompanied by the extinguishing of a right guaranteed by law, such as termination from employment without notice or an opportunity to be heard. *Hill*, 455 F.3d at 235–36.

Poleon alleges that on the day he was arrested, he was "placed on administrative leave with pay by Internal Affairs."[63] We need not address whether Poleon suffered damage to his reputation. He complains he was suspended *with* pay—an adverse employment action "less drastic than discharge." *Id.* at 238 (citations omitted). Suspension with pay does not constitute a deprivation of a protectable liberty interest "sufficiently weighty to satisfy the 'plus' requirement." *Id.* (collecting cases). Thus, Poleon fails to state a claim that the defendants conspired to violate his due process rights under the Fourteenth Amendment.

*First Amendment – Retaliation*

Poleon also claims that the defendants conspired to retaliate against him for exercising his First Amendment right.[64] The First Amendment right to free speech includes not only the affirmative right to speak, but also the right to be free from retaliation by a public employer for the exercise of that right. A government may not fire or otherwise retaliate against one of its employees for exercising his First Amendment rights. *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968); *Montone v. Cty. of N.J.*, 709 F.3d 181, 193–95 (3d. Cir. 2013) (quoting *Azzaro v. Cty. of Allegheny*, 110 F.3d 968 (3d Cir. 1997) (en banc)); *DiMeglio v. Haines*, 45 F.3d 790, 804 (4th Cir. 1995).

---

[63] *Id.* ¶ 135.

[64] *Id.* ¶¶ 206, 209.

Poleon exercised his right of free speech when he spoke out and complained about the VIPD's policy of sharing arrests. He asserts that his arrest, detention, and suspension from the VIPD were in retaliation for his speaking out. As a result, he claims he suffered damage to his professional reputation, and loss of income and earning capacity.

As a threshold matter, we must decide whether Poleon's complaints about arrest sharing were protected by the First Amendment. Public employees speaking on matters related to their employment are not afforded the same protection under the First Amendment as are private citizens. *Garcetti v. Ceballos*, 547 U.S. 410, 418–19 (2006); *De Ritis v. Roger*, 861 F.3d 444, 457 (3d Cir. 2017) (quoting *Lane v. Franks*, 134 S. Ct. 2369, 2381 (2014)). When the government acts as an employer, rather than as a regulator of private conduct, it has significantly stronger interests in restricting speech. To operate effectively, "public employees' First Amendment rights are limited by the Government's countervailing interest in efficient provision of public services." *De Ritis*, 861 F.3d at 452 (citing *Lane*, 134 S. Ct. at 2377); *see Garcetti*, 547 U.S. at 418–19 (citing *Connick v. Myers*, 461 U.S. 138, 143 (1983)). Still, a government employee remains a citizen and may speak out as a citizen about matters of public concern. *Garcetti*, 547 U.S. at 419 (citing *Perry v. Sindermann*, 408 U.S. 593, 597 (1972)). Thus, the government employer may only impose speech restrictions that are necessary to operate efficiently and effectively. *Id.* (citing *Connick*, 461 U.S. at 147).

The First Amendment protects a public employee's speech when: (1) the employee speaks as a citizen and not as an employee; (2) his statement involves a matter of public concern; and (3) the government employer lacked an "adequate

justification" in treating him differently than a member of the general public for making the same statement. *De Ritis*, 861 F.3d at 452 (citing *Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968); *Munroe v. Central Bucks Sch. Dist.*, 805 F.3d 454, 466 (3d Cir. 2015)).

To determine whether Poleon was speaking as a citizen or as a public employee, we ask whether his complaining of arrest sharing was within the scope of his job duties. *See De Ritis*, 861 F.3d at 453 (quoting *Lane*, 134 S. Ct. at 2379). If his statements were made pursuant to his official duties, he was not speaking as a citizen and "the Constitution does not insulate [his] communications from employer discipline." *Id.* (quoting *Garcetti*, 547 U.S. at 421). The scope of his employment is based on a practical consideration of what his job actually entails, rather than a narrow delineation of enumerated official versus unofficial duties. *See id.* (quoting *Garcetti*, 547 U.S. at 424–25).

Poleon argues that his complaints are protected because reporting arrest sharing was not one of his job duties.[65] On the contrary, his complaints were focused on his concerns about doing his job. "[C]ompleting [internal] forms as part of the police disciplinary process falls under officers' official duties." *Fraternal Order of Police, Lodge 1 v. City of Camden*, 842 F.3d 231, 244 (3d Cir. 2016). His were workplace grievances not protected by the First Amendment. *Id.* (citing *Connick*, 461 U.S. at 154); *see also Garcetti*, 547 U.S. at 420; *Weintraub v. Bd. of Educ.*, 593 F.3d 196, 201–02 (2d Cir. 2010) (rejecting the plaintiff's argument that his formal grievance against his supervisor was protected because he was not required to initiate grievance procedures); *Williams v. Dallas Indep. Sch. Dist.*, 480 F.3d 689, 693–94 (5th Cir. 2007) ("Simply because

---

[65] Resp. to GVI's Mot. to Dismiss (Doc. No. 37) at 8–9.

Williams wrote memoranda, which were not demanded of him, does not mean he was not acting within the course of performing his job.").

The dispositive issue is not whether Poleon complained up the chain of command, but whether he was acting as an employee when he made his complaint. *See Chavez-Rodriguez v. City of Santa Fe*, 596 F.3d 708, 715–16 (10th Cir. 2010); *Weisbarth v. Geauga Park Dist.*, 499 F.3d 538, 545 (6th Cir. 2007) (citing *Garcetti*, 547 U.S. at 423). The fact that he spoke to his supervisors in the workplace is instructive, but not dispositive. It is the employee's role that reveals whether he was speaking as an employee or as a private citizen. *See Garcetti*, 547 U.S. at 424 (explaining that First Amendment protection applies if there is a "relevant analogue to speech by citizens who are not government employees.").

Whether Poleon was speaking on a matter of public concern depends on whether the statement's "content, form, and context establish that the speech involves a matter of political, social, or other concern to the community." *Miller v. Clinton Cty.*, 544 F.3d 542, 548 (3d Cir. 2008) (citing *Connick*, 461 U.S. at 146–48). The "content, form, and context" of Poleon's complaints show that he was primarily speaking about his personal interests as an employee, not as a citizen. His statements were made directly to his supervisors and the Special Operations Bureau. He complained about how the practice of arrest sharing impacted him personally. Being instructed to lie about witnessing and effectuating an arrest but declining to do so "embarrassed" him because he is "not a lazy cop," and he's "never in [his] career lost a case or had one thrown out until now and it's not a good feeling."[66] He was concerned with his own interests as an

---

[66] Compl. Ex. 3, Letter from Poleon to Lt. Dennis Vanterpool, March 3, 2012 (Doc. No. 1-3).

employee. His complaints were "calculated to redress personal grievances," rather than to serve a "broader public purpose." *Singer v. Ferro*, 711 F.3d 334, 339 (2d Cir. 2013) (quoting *Lewis v. Cowen*, 165 F.3d 154, 163 (2d Cir. 1999)); *see also De Ritis*, 861 F.3d at 455 (quoting *Miller*, 544 F.3d at 551) ("[I]f a discrete unit of speech addresses only the employee's own problems, and even if those problems 'brush . . . against a matter of public concern' by virtue of that employee's public employment, then that speech is merely a 'personal grievance.' " (emphasis omitted)).

Poleon complained as an employee, not as a citizen. He complained about what was going on in the course of his employment and how it affected his duties as a police officer. He was not making a public complaint. He was not acting as a private citizen. Thus, Poleon fails to state a claim based on retaliation for exercising his First Amendment rights.

In summary, although his First and Fourteenth Amendment claims fail, Poleon alleges a conspiracy between Joseph and Brown to violate his Fourth Amendment rights to be free from illegal seizure. The claims against AAG Ortiz fail because Poleon has not alleged facts that she was personally involved in the conspiracy. Although Poleon alleges that AAG Sedar participated in the conspiracy, as we discuss below, AAG Sedar enjoys absolute prosecutorial immunity.

**Absolute Immunity**

AAGs Ortiz and Sedar argue that they are absolutely immune from suit because their conduct was intimately associated with the judicial phases of litigation and carried out in furtherance of their roles as prosecutors. They contend that even if they had

acted intentionally, they are protected because they acted pursuant to their official duties as advocates for the government in initiating and carrying out a prosecution.

In determining whether the prosecutor's activity is covered by absolute immunity, we examine the nature of the function performed. *Van de Kamp v. Goldstein*, 555 U.S. 335, 342 (2009) (citation omitted); *Harlow v. Fitzgerald*, 457 U.S. 800, 811 (1982); *B.S. v. Somerset Cty.*, 704 F.3d 250, 269 (3d Cir. 2013) (quoting *Ernst v. Child and Youth Servs. of Chester Cty.*, 108 F.3d 486, 497–98 (3d Cir. 1997)). The test is whether the action clearly serves the prosecutorial function. *Schneyder v. Smith*, 653 F.3d 313, 332 (3d Cir. 2011) (citation omitted). If they do, the prosecutor is entitled to absolute immunity.

Prosecutors enjoy absolute immunity for actions taken in initiating and participating in judicial proceedings. *Schneyder*, 653 F.3d at 333 (citing *Van de Kamp*, 555 U.S. at 344–45); *Donahue v. Gavin*, 280 F.3d 371, 377 n.15 (3d Cir. 2002). Immunity covers activities conducted in court, such as presenting evidence or making legal arguments. *King v. Deputy Atty. Gen. Del.*, 616 F. App'x 491, 495 (3d Cir. 2015) (citing *Burns*, 500 U.S. at 490–92); *Giuffre v. Bissell*, 31 F.3d 1241, 1251 (3d Cir. 1994) (quoting *Kulwicki v. Dawson*, 969 F.2d 1454, 1463 (3d Cir. 1992) and citing *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)). The protection extends to activities outside the courtroom that are "intimately associated with the judicial phase of the criminal process." *Van de Kamp*, 555 U.S. at 341 (quoting *Imbler*, 424 U.S. at 430). Protected activities include those occurring in the course of the prosecutor's role as an advocate for the government, including preparations for the initiation of judicial proceedings and trial. *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993); *Yarris v. Cty. of Del.*, 465 F.3d

129, 135 (3d Cir. 2006); *Giuffre*, 31 F.3d at 1252 (quoting *Kulwicki*, 969 F.2d at 1463–64). Thus, absolute immunity attaches to the prosecutor's decision to initiate and to pursue a prosecution. *Yarris*, 465 F.3d at 135 (citing *Imbler*, 424 U.S. at 424); *Donahue*, 280 F.3d at 377; *Munchinski v. Solomon*, 618 F. App'x 150, 154 (3d Cir. 2015) (citations omitted).

Absolute immunity protects a prosecutor's decision to seek an arrest warrant. *Odd v. Malone*, 538 F.3d 202, 210 (3d Cir. 2008) (citing *Kalina v. Fletcher*, 522 U.S. 118, 126 (1997)); *see also Barton v. Curtis*, No. 2005-2, 2008 WL 5082415, at *4 (D.V.I. Nov. 25, 2008) (citing *Kalina*, 522 U.S. at 126), *aff'd*, 355 F. App'x 635 (3d Cir. 2009). A prosecutor's application for an arrest warrant is an unsworn document and it is pursued in furtherance of his or her prosecutorial capacity. *Odd*, 538 F.3d at 210; *Barton*, 2008 WL 5082415, at *4.

AAGs Ortiz and Sedar, acting in their capacity as assistant attorneys general, are absolutely immune from claims arising from the investigation and the prosecution of Poleon. *See Van de Kamp*, 555 U.S. at 341. The decision to bring charges and to prosecute a case falls within the prosecutorial function. *See Kalina*, 522 U.S. at 125–26; *Imbler*, 424 U.S. at 431. This is true even if they acted "without a good faith belief that any wrong-doing has occurred." *Giuffre*, 31 F.3d at 1252 (quoting *Kulwicki*, 969 F.2d at 1463–64). Because AAGs Ortiz and Sedar were acting in furtherance of their roles as prosecutors, they are absolutely protected by prosecutorial immunity from the civil rights claim and all territorial claims, including abuse of process, false arrest, false imprisonment, defamation, intentional infliction of emotional distress, and loss of consortium.

*Abuse of Process*

AAGs Sedar and Ortiz enjoy absolute immunity from the abuse of process claims. Although AAG Ortiz was neither involved in preparing the probable cause affidavit nor present in the meeting where Poleon was arrested, Poleon contends that she suppressed the release letter. When Poleon called her to inquire about the release letter before the meeting where he was arrested, she told him she could not discuss the letter, but that he should attend the meeting.[67] Drawing all inferences in favor of Poleon, this allegation does not translate to wrongful conduct.

Prosecutors are entitled to absolute immunity from a claim based on their failure to disclose exculpatory information prior to trial if they did so while functioning in the prosecutorial capacity. *Yarris*, 465 F.3d at 137 (quoting *Imbler*, 424 U.S. at 431–32 n.34). Construing all factual allegations in the light most favorable to Poleon, AAG Ortiz's failure to disclose the release letter was within her prosecutorial capacity. There was an ongoing investigation. The letter was not withheld from a criminal defendant. No *Brady* obligation attached at that time. Significantly, there is no allegation that she participated in the investigation. Thus, we shall grant her motion to dismiss the abuse of process claim.

The complaint alleges that AAG Sedar "used the criminal justice system to retaliate against Officer Poleon for standing up to the VIPD's policy of 'sharing arrests' and/or to cover-up [AAG Ortiz's] spoliation of evidence in the *Milligan* case."[68] AAG Sedar acted as "an advocate for the State" in the probable cause hearing. *Burns*, 500

---

[67] Compl. ¶¶ 116–18.

[68] *Id.* ¶ 229.

U.S. at 489–93 (citing *Imbler*, 424 U.S. at 431). His decision to initiate prosecution was an essential part of the prosecutorial function. *Imbler*, 424 U.S. at 430–31. Because the abuse of process claim against AAG Sedar is based on his conduct as a prosecutor in connection with the initiation and prosecution of the criminal case, he is protected by absolute immunity.

### False Arrest and False Imprisonment

Poleon contends that AAG Sedar lied or failed to inform the court about the existence of the release letter in the *Milligan* case. Poleon does not allege that AAG Sedar was aware of Brown's lies and omissions that led to the issuance of the warrant. A prosecutor's procuring an arrest warrant is a typical prosecutorial function in the course of the judicial process. *See Kalina*, 522 U.S. at 126; *Barton*, 2008 WL 5082415, at *4. Hence, AAG Sedar is also protected by absolute immunity from claims for false arrest and false imprisonment.

### Defamation

In support of his claim for defamation, Poleon alleges that AAG Sedar falsely represented that Poleon was "politically connected" and his removing the *Milligan* vehicle from the impound lot was an effort to frustrate the criminal investigation.[69] In the meeting where Poleon was arrested, AAG Sedar commented to Poleon and the other officers in the room that he reviewed the *Milligan* file and stated, "[t]his is what gets me

---

[69] *Id.* ¶¶ 123–24, 221.

– you sold this truck and you didn't make any money from it."[70]  AAG Sedar then accused Poleon of purposely destroying evidence to "get Milligan off."[71]

AAG Sedar's statements at the pre-arrest meeting fall within the scope of his prosecutorial immunity.  They were accusatory comments made during the course of an interrogation.  AAG Sedar was acting as a prosecutor in that meeting when he made the statements.  Hence, he is immune from a defamation claim.

### Territorial Claims

If all federal claims are dismissed before trial, "the district court *must* decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification" for retaining jurisdiction.  *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) (emphasis in original) (citing *Borough of West Mifflin v. Lancaster,* 45 F.3d 780, 788 (3d Cir. 1995)); *see Figueroa v. Buccaneer Hotel Inc.*, 188 F.3d 172, 181 (3d Cir. 1999) (as applied to territorial claims).   However, we cannot decline to exercise supplemental jurisdiction over a territorial claim based on the same nucleus of operative facts as a surviving federal claim unless there is a substantial countervailing consideration for doing so. *Lancaster,* 45 F.3d at 788 (citing *United Mineworkers v. Gibbs*, 383 U.S. 715, 725 (1966), and *Sparks v. Hershey*, 661 F.2d 30, 33–34 (3d Cir. 1981)); *see Figueroa*, 188 F.3d at 181.

The federal civil rights claims against the GVI, AAG Ortiz, and AAG Sedar fail. The remaining territorial claims are inextricably intertwined with the surviving federal

---

[70] *Id.* ¶ 123.

[71] *Id.* ¶¶ 124–25.

civil rights claims against the other defendants. No extraordinary circumstances exist here. Accordingly, we shall exercise supplemental jurisdiction over the remaining territorial claims.

## VITCA

The GVI moves to dismiss Poleon's tort claims because he failed to comply with the filing requirements of the VITCA. A plaintiff bringing a tort claim against the Government of the Virgin Islands must comply with the notice requirements of the VITCA. V.I. Code Ann. tit. 33, § 3408 *et seq.*

To sufficiently comply with the jurisdictional requirements of the VITCA, the notice must "state the time when and the place where such claim arose, the nature of same," and "shall be verified." *Brunn v. Dowdye*, 59 V.I. 899, 908–09 (V.I. 2013) (quoting V.I. Code Ann. tit. 33, § 3410). The statute only requires that the notice include a statement "with sufficient definiteness" to enable the government officials to investigate and determine whether the claim should be resolved without suit. *Id.* at 910 (citation omitted).

Poleon's notice fails to satisfy "even this minimal standard." *Id.* The notice did not make or refer to any claim for negligent hiring and retention.[72] With respect to his other claims, the notice was deficient because it did not provide when, where and how the claims arose. There were no details from which the government officials could discern the nature of the claims in order to investigate and resolve them. It merely

_____

[72] GVI Mot. to Dismiss, Ex. 1, VITCA Notice to GVI from Kye Walker, Counsel for Anderson Poleon, Oct. 15, 2012 (VITCA Notice) (Doc. No. 28-1). Although Poleon's notice also included claims for defamation, slander, and negligent infliction of emotional distress, he did not bring those claims against the GVI. Poleon voluntarily dismissed his claim for malicious prosecution. Notice of Voluntary Dismissal (Doc. No. 44).

identifies the type of claims Poleon intended to bring and a settlement demand. In short, the notice failed to "set forth more than mere conclusory allegations of the Government's liability." *Id.* (quoting *Gonzalez v. Stevens*, 19 V.I. 515, 518–19 (D.V.I. 1983)). Thus, we shall dismiss Poleon's territorial claims against the GVI for failure to comply with the jurisdictional prerequisites of the VITCA.

Even if Poleon's notice had included sufficient detail to meet the jurisdictional prerequisites of the VITCA, the notice was nonetheless untimely with respect to his claims for false arrest and false imprisonment. The VITCA requires a plaintiff to either file suit or give notice of intention to do so within ninety days of the accrual of the claim. V.I. Code Ann. tit. 33, § 3409(c).

Poleon's claims for false arrest, false imprisonment, and intentional infliction of emotional distress accrued on the day he was arrested, July 11, 2012. *See O'Reilly v. Gov't of V.I.*, No. 11-0081, 2015 WL 4038477, at *4 (D.V.I. June 30, 2015) (citing *Kach v. Hose,* 589 F.3d 626, 634 (3d Cir. 2009)) (cause of action under the VITCA accrues when the plaintiff knew or should have known of the injury and its cause). Consequently, he had until October 11, 2012 to file a claim or notice of a claim. Yet, Poleon did not file his notice until October 16, 2012, five days after the ninety-day period had expired. VITCA Notice; *see also Connor v. Gov't of V.I.*, 20 V.I. 100, 103–04 (Terr. V.I. 1983) (holding that the date a VITCA is deemed filed is the date the Governor's office receives it).

Poleon asserts that the VITCA notice requirements should be equitably tolled under the continuing violation doctrine.[73] A "continuing violation is occasioned by

---

[73] Pl. Opp'n to GVI Mot. to Dismiss (Doc. No. 37) at 10.

continual unlawful acts, not continual ill effects from an original violation." *Cowell v. Palmer Twp.*, 263 F.3d 286, 293 (3d Cir. 2001) (citation omitted). Thus, when applying the continuing violation doctrine, we ask: (1) whether the alleged tort giving rise to the plaintiff's harm is recurring; (2) if so, whether the resulting injury is permanent; and (3) if so, when did the plaintiff know or could have known of the critical facts indicating that the injuries were likely to be permanent. *See In re Tutu Wells Contamination Litig.*, 909 F. Supp. 980, 988 (D.V.I. 1995) (citations omitted). Poleon does not allege any "recurring" violations after July 11, 2012, the day he was arrested and imprisoned. Poleon's territorial claims involve discrete, non-recurring acts. Each separate act was completed when committed.

The remaining territorial claims are against the individual officers. Poleon brings the following claims against Joseph—defamation, abuse of process, intentional infliction of emotional distress, and loss of consortium; and Brown—defamation, false arrest, false imprisonment, abuse of process intentional infliction of emotional distress, and loss of consortium.

## Defamation

To state a claim for defamation, Poleon must allege that: (1) the defendant made a false and defamatory statement about him; (2) the defendant made an unprivileged publication of the statement to a third party; (3) the defendant made the communication either intentionally or negligently; and (4) the publication caused the plaintiff special harm. *Chapman v. Cornwall*, 58 V.I. 431, 444 (V.I. 2013) (citing *Kendall v. Daily News Pub. Co.*, 55 V.I. 781, 787 (V.I. 2011), *aff'd*, 716 F.3d 82 (3d Cir. 2013); and Restatement (2d) Torts §§ 557–59)); *see also Manns v. The Leather Shop, Inc.,* 960 F.

Supp. 925, 929 (D.V.I. 1997) (citing *Ross v. Bricker*, 770 F. Supp. 1038, 1042 (D.V.I. 1991)).[74] A statement is defamatory if it tends to harm the plaintiff's reputation "as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Kendall*, 716 F.3d at 89 (quoting Restatement (2d) Torts § 559)).

Poleon asserts a defamation claim against Sedar, Joseph, Howell, Brown, and Frankie Ortiz.[75] AAG Sedar's alleged defamatory statements were made during the questioning of Poleon in the course of an investigation. Because AAG Sedar enjoys absolute immunity, we consider the claims against only Joseph and Brown.

Poleon alleges Joseph repeatedly told "anyone willing to listen" that Poleon was "politically connected" to Milligan, and he removed the vehicle in an effort to scuttle the prosecution in the *Milligan* case.[76] With respect to Brown, Poleon alleges that he "caused" the false statements in his probable cause affidavit to be published in the police blotter, which was "circulated throughout the community through the media."[77]

Joseph's statements may have been false and defamatory.[78] But, the complaint fails to allege where, when, and to whom Joseph made the statements that Poleon destroyed evidence to help Milligan because they were "politically connected." Without this information, the complaint fails to put Joseph on notice of the basic nature of the

---

[74] The restatements of law are persuasive authority in the Virgin Islands. *See, e.g., Gov't of V.I. v. Connor*, No. 2013-0095, 2014 WL 702639, at *3 (V.I. Feb. 24, 2014); *Brunn v. Dowdye*, No. 2011-0085, 2013 WL 5609326, at *24 n.10 (V.I. Oct. 11, 2013).

[75] Compl. ¶ 221.

[76] *Id.* ¶¶ 71, 221.

[77] *Id.* ¶ 220.

[78] An opinion, without more, typically does not create a cause of action in defamation. However, a "statement in the form of an opinion, . . . if it implies the allegation of undisclosed defamatory facts as the basis for the opinion," may constitute defamation. Restatement (2d) Torts § 556; *see also Redco Corp. v. CBS, Inc.*, 758 F .2d 970, 972 (3d Cir. 1985); *Rohn*, 2011 WL 3687626, at *4 (citations omitted).

claim against him. *Rishell v. RR Donnelley & Sons Co.*, No. 06-4782, 2007 WL 1545622, at *3 (E.D. Pa. May 24, 2007) (citing Fed. R. Civ. P. 8(a) and collecting cases); *see also VECC, Inc. v. Bank of Nova Scotia*, 296 F. Supp. 2d 617, 620 n.1 (D.V.I. 2003) (finding that, in the context of a defamation claim in federal court, the federal rules, not state law, govern the application of pleadings standards). *But see Biss v. Gehring-Montgomery, Inc.*, No. 16-4472, 2017 WL 1739592, at *3 (E.D. Pa. May 4, 2017). Viewed in the light most favorable to Poleon, he fails to state a claim for defamation against Joseph.

When a complaint does not withstand a 12(b)(6) motion, a curative amendment must be allowed unless amendment would be inequitable or futile. *Estate of Lagano v. Bergen Cty. Prosecutor's Office*, 769 F.3d 850, 861 (3d Cir. 2014) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008)); *see also Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004). Because it appears Poleon may be able to cure the deficiencies we have identified regarding his defamation claim against Joseph, we shall give him leave to amend. If he files an amended complaint, he must articulate the factual bases for his claims.

The defamation claim against Brown implicates the differences between claims brought by public officials and private citizens. If the plaintiff is a public official alleging defamation, we must determine whether the defamatory statement addressed a matter of public or private concern. A matter is of public concern if it is about the plaintiff's conduct, fitness, or role in his capacity as a public official. *Joseph v. Daily News Publ'g Co., Inc.*, 57 V.I. 566, 588 (V.I. 2012). Otherwise, a matter is of private concern. Where the statement addresses a private matter, the plaintiff need only show that the

defendant is merely negligent in failing to verify the truth of the statement. *Id.* at 589–90 (quoting Restatement (2d) Torts § 580B). But where the communication addresses a public matter, the plaintiff must prove that the defendant acted with actual malice. *Id.* at 588–89 (citing *New York Times Co. v. Sullivan*, 376 U.S. 254, 283–84 (1964)).

A defendant acts with actual malice if he knows the statement is false and defamatory, or he acts in reckless disregard of the truth. *Id.* at 588 (quoting Restatement (2d) Torts § 580A). If the defendant "entertained serious doubts as to the truth of his publication," or had "a high degree of awareness" of his publication's "probable falsity," he acts with actual malice. *St. Surin v. V.I. Daily News, Inc.*, 21 F.3d 1309, 1317 (3d Cir. 1994) (internal quotation marks omitted) (quoting *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968); *Garrison v. La.*, 379 U.S. 64, 74 (1964)). A mere failure to investigate before publishing, even when a reasonably prudent person would have done so, is insufficient to establish reckless disregard. The defendant must have had a high degree of awareness that the statement was probably false. *Joseph*, 57 V.I. at 588–89 (quoting *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 688 (1989)).

Poleon, a police officer, is a public official. *Coughlin v. Westinghouse Broad. & Cable Inc.*, 780 F.2d 340, 342 (3d Cir. 1985). Hence, Poleon must allege that Brown with actual malice—that they acted knowingly or with reckless disregard when they made the alleged defamatory statements regarding the *Milligan* case and the arrest published in the police blotter.

Poleon alleges that Brown "caused their false and defamatory statements to be published in the police blotter, which was then circulated throughout the community

through the media."[79]  The statements implicate matters of public concern because "a charge of criminal conduct" against a public official "is always relevant to his fitness for office for purposes of applying the *New York Times* rule of knowing falsehood or reckless disregard of the truth." *Donastorg v. Daily News Publ'g Co.*, 63 V.I. 196, 229 & n.72 (V.I. Super. 2015) (quoting *Ocala Star-Banner Co. v. Damron*, 401 U.S. 295, 300 (1971)).

The allegations that Brown caused the false statements in the arrest report and probable cause affidavit to be published in the police blotter, which was in turn published throughout the media, fails to state a claim for defamation.  That Poleon's arrest appeared in the blotter was not because Brown put it there.  The police blotter simply records all arrests made by the VIPD.  Brown did not publish Poleon's arrest or the circumstances surrounding it.  Nor is there any allegation that Brown affirmatively released or otherwise provided the blotter to the media.  Poleon's defamation claim appears to hold liable Brown for placing the arrest information in the public police records, not in the media.  As alleged, it was the media that published it.  Thus, the defamation claim against Brown fails.

### False Arrest

To state a false arrest claim, the arrest must be one made without probable cause.  *Groman*, 47 F.3d at 634; Restatement (2d) Torts § 45A, cmt. b (citing Restatement (2d) Torts § 41); *see also Charleswell v. Bank of Nova Scotia*, No. 605/96, 2001 WL 1464759, at *2 (Terr. V.I. May 1, 2001) (citing *Burt v. Ferrese,* 871 F.2d 14, 17 (3d Cir. 1989); and *Deary v. Evans*, 19 V.I. 581 (D.V.I. 1983); and *Yeamans v. Snook,*

---

[79] Compl. ¶ 220.

15 V.I. 124 (D.V.I. 1979)).  Although Poleon was arrested pursuant to an arrest warrant, he contends it was illegal because the warrant had been issued in reliance on false representations by Howell, Brown, and Frankie Ortiz.

An arrest made "under a properly issued warrant by an officer charged with the duty of enforcing it" cannot support a claim for false arrest.  Restatement (2d) Torts § 45A, cmt. b.  Poleon alleges that his arrest warrant was not validly issued because it was not based on probable cause.  As we have discussed, the probable cause affidavit was invalid because it was based on false statements and material omissions.

Poleon claims that Brown knew he had not committed any offense, but lied in order to arrest him.  In other words, he contends Brown improperly procured the warrant to justify arresting him.  Poleon sufficiently alleges that the falsifications in the affidavit rendered his arrest unlawful.  *See Wilson*, 212 F.3d at 786–87.  Thus, his claim for false arrest against Brown survives dismissal.

### False Imprisonment

To state a false imprisonment claim, the plaintiff must allege that: (1) the defendant intended to confine the plaintiff; (2) the defendant confined him; and (3) he was conscious of, or harmed by, the confinement.  *Illaraza v. HOVENSA LLC*, 73 F. Supp. 3d 588, 616 (D.V.I. 2014) (citing Restatement (2d) Torts § 35).

Poleon alleges that Brown submitted a false probable cause affidavit and ignored the magistrate's instructions.  Despite the magistrate's directing Brown to contact her after the arrest so she could release Poleon before he was held overnight, Brown never contacted her.  According to Poleon, Brown did not notify the magistrate because

Howell "said to leave Poleon in there."[80]  These allegations suffice to state a claim that Brown acted with the intent to confine Poleon, and the conduct resulted in his confinement.  Poleon was undoubtedly conscious of and harmed by his imprisonment. These allegations state a claim for false imprisonment against Brown.

### Abuse of Process

In his claim for abuse of process, Poleon alleges that AAG Ortiz, AAG Sedar, Joseph, Brown, Howell, and Frankie Ortiz used the criminal justice system to cover up AAG Ortiz's spoliation of evidence and/or to retaliate against him for speaking out against arrest sharing.[81]  Poleon alleges that Joseph lied about the existence of the release letter both in the probable cause affidavit and at the hearing in the *Milligan* case.[82]  He claims that Brown submitted the false probable cause affidavit.[83]  He also alleges that Brown, at Howell's instruction, failed to contact the magistrate after his arrest to have him released instead of spending the night in jail.[84]  While Poleon was in custody, his wife observed Brown, Frankie Ortiz, and another officer search his outside property, photograph their personal vehicles, and record the vehicles' VIN numbers.[85]

To state a cause of action for abuse of process, Poleon must allege that the defendants: (1) used legal process against him; (2) used this process for a purpose for which it was not designed; and (3) caused him harm.  *McDonald v. Davis*, 51 V.I. 573,

---

[80] *Id.* ¶¶ 144–46.

[81] *Id.* ¶ 229.  As we noted, both AAGs Ortiz and Sedar enjoy absolute immunity.

[82] Compl. ¶¶ 93–95, 165.

[83] *Id.* ¶¶ 99–106; 161–65, 167–69.

[84] *Id.* ¶¶ 144–46.

[85] *Id.* ¶ 153.

601 (D.V.I. 2009) (quoting Restatement (2d) Torts § 682). The second element of this test does not require that the purpose of the legal process be connected or related to the underlying litigation to qualify as an abuse. *Gen. Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 301 (3d Cir. 2003). "The gravamen of the misconduct . . . is not the wrongful procurement of legal process or the wrongful initiation of criminal or civil proceedings; it is the misuse of process, no matter how properly obtained, for any purpose other than that which it was designed to accomplish." Restatement (2d) Torts § 682, cmt. a.

The wrongful initiation of criminal proceedings does not state a claim for an abuse of process. Restatement (2d) Torts § 682, cmt. a. It is conduct that occurs after the initiation of the criminal proceeding that gives rise to an abuse of process. For example, intentionally withholding critical documents, ignoring court orders, or misrepresenting facts to opposing counsel and the court can support an abuse of process claim. *McDonald*, 51 V.I. at 601 (citing *Gen. Refractories*, 337 F.3d at 301).

To determine whether an abuse of process has occurred, the court must ask whether there has been a "perversion" of the process, or if a legal process has been used "as a tactical weapon to coerce a desired result that is not the legitimate object of the process." *Gen. Refractories*, 337 F.3d at 307 (quoting *McGee v. Feege*, 535 A.2d 1020, 1026 (Pa. 1987)).

Poleon contends that Joseph's false testimony in the *Milligan* hearing formed the basis of the probable cause affidavit used to secure his illegal arrest and imprisonment. He attempts to link Joseph's actions in the criminal proceedings against Milligan to the

actions taken against him.  What the defendants did in the *Milligan* case, no matter how egregious, cannot be used to support Poleon's claims in this case.

There are no allegations of Joseph's involvement after Poleon's arrest.  Because Joseph was not involved in the criminal proceedings after they were initiated, he cannot be held liable for abusing them.

Poleon claims that Brown remained involved after his arrest.  Brown's failure to contact the magistrate as instructed may constitute ignoring a court order, resulting in extended confinement under punitive conditions.  However, Howell, his supervisor, allegedly instructed Brown not to call.  These allegations fail to state a claim against Brown.  Instead, the reasonable inference is that Howell was using Brown to pervert the process to retaliate against and punish Poleon.

The search of Poleon's property conducted by Brown and Frankie Ortiz took place after he had already been arrested and in the absence of any search warrant.  Brown did not use the legal processes at issue in this case, namely Poleon's arrest and imprisonment, for a purpose for which they are not designed.  Although the search may have been trespassing, it cannot be considered an abuse of process.  There is no trespassing claim before us.  For these reasons, the abuse of process claim against Brown will be dismissed.

### Intentional Infliction of Emotional Distress

Poleon sufficiently alleges a claim for intentional infliction of emotional distress against Joseph and Brown.[86]  He asserts that as a result of the individual defendants'

---

[86] As with the loss of consortium claims, the intentional infliction of emotional distress claims against the GVI and AAGs Sedar and Ortiz must be dismissed for failure to comply with the VITCA and absolute immunity, respectively.

"extreme, outrageous, inexcusable and unjustifiable behavior," they have suffered "emotional distress and bodily harm."[87]

To state a claim for intentional infliction of emotional distress, the plaintiff must allege that the defendant, through extreme or outrageous conduct, intentionally or recklessly caused the plaintiff severe emotional distress. *Erysthee v. Shipping*, No. 15-58, 2018 WL 1527821, at *3 (D.V.I. Mar. 27, 2018) (citing *Nino v. Jewelry Exchange, Inc.*, 50 V.I. 929, 932 (D.V.I. 2008)); *see also Manns*, 960 F. Supp. at 930; and Restatement (2d) Torts § 46. The conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Manns*, 960 F. Supp. at 930 (quoting Restatement (2d) Torts § 46 cmt. d; and citing *Cox v. Keystone Carbon Co.*, 861 F.2d 390 (3d Cir. 1988)). It is not enough that the defendant acted with criminal intent or even if he acted with malice. The conduct must be extreme and outrageous. Restatement (2d) Torts § 46(1), cmt. d.

First, we must determine whether the defendants' conduct could "reasonably be regarded as so extreme and outrageous as to permit recovery." *Nino*, 50 V.I. at 932 (citations omitted). If reasonable people would differ as to whether the conduct is extreme or outrageous, the claim must survive. *Id.* (citation omitted). No reasonable person would dispute that the alleged conduct, if proven, was extreme and outrageous as to Poleon. However, the conduct affecting Beatrice Poleon was not extreme and outrageous.

---

[87] Compl. ¶¶ 250–51.

On the day of Poleon's arrest, Joseph pulled over his wife, Beatrice.[88]  She was

on her way home from work after learning that her husband had been arrested.[89]

Although Joseph did not exit the police cruiser, he watched her from inside his police

car and drove away when Beatrice exited the vehicle to ask why she had been pulled

over.[90]  When she arrived home, she observed Brown, Frankie Ortiz, and another officer

searching the outside of the house, photographing the vehicles in the driveway, and

recording the vehicles' information.[91]  Viewing these allegations in the light most

favorable to Beatrice Poleon, they do not state a claim for intentional infliction of

emotional distress.

If Poleon proves that Brown and Joseph intentionally misrepresented and omitted

material facts in an affidavit to support a warrant for his arrest, a reasonable jury could

find that their actions were extreme and outrageous.  The allegations that their actions

were instigated and calculated to cause Poleon harm sufficiently state a cause of action

for intentional infliction of emotional distress.

### Loss of Consortium

A loss of consortium claim is a derivative claim based on the existence of tortious

conduct on the part of the defendant.  *Banks v. Int'l Rental & Leasing Corp.*, Nos. 2002-

200–03, 2008 WL 501171, at *3 (D.V.I. Feb. 13, 2008), *rev'd on other grounds*, 680

F.3d 296 (3d Cir. 2012); *Benjamin v. Cleburne Truck & Body Sales, Inc.*, 424 F. Supp.

1294, 1299 (D.V.I. 1976).  A spouse may maintain an action for loss of consortium

---

[88] *Id.* ¶¶ 147–50.

[89] *Id.* ¶ 150.

[90] *Id.* ¶¶ 151–52.

[91] *Id.* ¶ 153.

where the defendant has caused the other spouse to suffer bodily injuries. *Benjamin*, 424 F. Supp. at 1299. To avoid double recovery for any injuries sustained by Poleon, the interests protected in the loss of consortium claim must be personal to his wife, Beatrice. *Id.* at 1298 n.12. The impaired spouse may recover for bodily harm and emotional distress, loss or impairment of earning capacity, and reasonable medical and other expenses. Restatement (2d) Torts § 693 cmt f.

With regard to § 1983 claims, a spouse may not assert loss of consortium arising from violations of her husband's civil rights. *Pahle v. Colebrookedale Twp.*, 227 F. Supp. 2d 361, 381 (E.D. Pa. 2002) (citing *O'Malley v. Brierley*, 477 F.2d 785 (3d Cir. 1973)). With regard to territorial claims, a related claim for loss of consortium fails where there is no tort liability. *Banks*, 2008 WL 501171, at *3 (citing *Murray v. Commercial Union Ins. Co.*, 782 F.2d 432, 438 (3d Cir. 1986); and *Chelcher v. Spider Staging Corp.*, 892 F. Supp. 710, 718 (D.V.I. 1995)).

To the extent that Beatrice Poleon's loss of consortium claim is based on alleged civil rights violations against her husband, her claim fails. *Pahle*, 227 F. Supp. 2d at 381. However, her loss of consortium claim survives against Brown. Her claim is derived from her husband's tort claims of false arrest and false imprisonment against Brown.

### Conclusion

We shall dismiss the GVI as a defendant because Poleon lacks standing to bring a Fourth Amendment claim on behalf of the citizens of the Virgin Islands, and he has failed to comply with the notice requirement of the VITCA. We shall also dismiss the § 1983 claim against AAG Ortiz because Poleon fails to allege her personal

45

involvement; and, even if he had, she enjoys absolute immunity.  AAG Sedar enjoys absolute immunity from suit for a civil rights conspiracy.  Both prosecutors are absolutely immune from all territorial claims brought against them. Those claims shall be dismissed.

As to Joseph and Brown, the civil rights conspiracy claim survives, but the abuse of process claim fails.  Brown must defend against the claims for false arrest, false imprisonment, and loss of consortium.  However, the defamation claim against Brown fails because there is no allegation of publication.  We shall grant leave for Poleon to amend his complaint as to the defamation claim against Joseph.  Finally, Poleon, but not his wife, states a claim for intentional infliction of emotional distress against Joseph and Brown.